Mr. Glosman, good morning. Good morning, Your Honors. May it please the Court, Vadim Glosman on behalf of Defendant Appellant Deny Mitrovich, I respectfully be honored to be here today. I want to begin by saying that I am not in favor of this denial to sanction the government for violating a discovery order in which they failed to comply with it when I expressly directed them to produce source code of the malware that was used to obtain Mr. Mitrovich's IP address. I know we raised multiple issues on appeal today. I want to focus on the Rule 16 violation and the good faith exception that the District But at its core, this case comes down to the fundamental fairness of the accused in a criminal proceeding, and particularly where the government takes away their main vehicle of defending themselves by saying they can't produce something that the court specifically told them they have to produce. They compel them to produce. And what makes this even more egregious is the government told the District Court before the ruling on the motion to compel that they didn't have the source code, that they would have trouble getting it. That was in their briefings. And the court found that they should still have to turn it over. And so what makes this case a little bit different than United States v. Lee, which is the second district case or second circuit case that the District Court and the government rely on, and every other case pretty much that the government cites is the motion to compel was already ruled on in this case. What the District Court said, government, you have to turn over your communications with Oceanian officials or law enforcement officials and the source code. Yeah, I think that what you have to grapple with is the subsequent finding, right, that the District Court made after the motion to compel when, you know, all the issues were litigated. I mean, there's a subsequent finding that the government did make a good faith diligent effort to obtain the code, and they couldn't, and they produced what they did. But then you've got to weigh what's more important here, the government's ability to get a conviction or an accused person's ability to defend themselves. So what's the essence of your claim then? So if your argument at bottom, at the end of the day, is that there's just a mandatory constitutionally imposed or Rule 16 based production requirement that is ironclad here, you're asking that there would have been District Court-ordered dismissal of the indictment? Dismissal would come if there was a brevity violation. I think the sanction that was appropriate here was suppression of the evidence that derived from that. And if that ended with the government having to dismiss their case because their made evidence was suppressed, that's on them. But the Rule 16 violation would go to the District Court ruling that the sanction is suppressing the evidence that came from the source code. So it seems to me with Rule 16's language about custody, possession, and control, given the finding, that's a very hard argument for your client to make, right? So you started by saying, I want to focus on Rule 16, but aren't you really saying you want to focus on Brady and the due process clause? I think they're both a little bit overlapping, Your Honor. And the reason I want to focus on Rule 16 here is because the court imparted on the government constructive possession, which they'll allow to do when there's a joint investigation. And we proved and the court found that there was prima facie evidence of a joint investigation. And again, at that point when we were arguing for the motion to compel, the government was already saying we're probably not going to be able to get this. We don't have this. And the court took that into consideration and still said you have to produce this. In United States v. Lee, which is what the government relies on and what the District Court relied on, the issue in that case was that the motion to compel was denied. And the basis for the denial was that the government acted in good faith in trying to get these Title III applications or I'm calling them Title III applications, but the wire communication. And so the good faith was prior to the motion to compel. So if the government wanted to make the argument that, you know what, we're not going to be able to get this, Your Honor, no matter how hard we try, they had to make that before he issued the motion to compel. Once he says you're compelled to do this, they're bound by it. If not, what's the point of doing it? The court did give them an opportunity to do targeted objections. But saying we can't get it is not an objection. An objection is it's privileged, it's confidential, something of that sort. But just by saying, you know what, we can't get it, well, that's on the government. That shouldn't go on Mr. Mitrovich. We proved that there was a cogent theory for why this was material because there were a string of cases around the country where malware was used that constituted a Fourth Amendment trespass on a person's computer by putting code on there. So he said this code was going to be material. Then there were, through the government's own reports, a showing that there was a joint investigation between the United States, the FBI, and the Oceanian authorities. What happened was the FBI found out about this website called the Love Zone. They found out the server was in the Netherlands. So they told the Dutch authorities about that and they found out that the owner of that server lived in Australia. So after the Dutch seized that server, they turned that server over to the United States and to Oceanian authorities. Once Oceanian authorities had that, they arrested the administrator and took control of it and sent copies of what was on the Love Zone to the United States. They then had weekly meetings delegating duties about what to do. In these communications, there was a point where they even sent an overview of what the source code did to the government, which they ended up turning over to us and which our experts said is not sufficient to get to the root of what happened here. So the government is working hand-in-hand, the FBI, with Oceanian authorities. What else separates Lee from... Forget Lee for just a second. I want to make sure I... So is your argument in a joint investigation context like this that the government is under an unyielding production requirement, notwithstanding its good faith or diligent efforts to obtain the material sought, the information sought? It's unyielding if there's a court order saying you have to turn it over. Hold on. It's almost as if you're arguing about Judge Feinerman's first order. He entered two orders. He entered a second order. That's the order that's being appealed, the denial of the sanctions motion. And in that order, there's a very clear finding, is there not, about good faith, diligent efforts. And so what I'm trying to figure out with my question is, is your argument that it is legally irrelevant that there was good faith and diligence? In other words, as a matter of law, the moment that there's a joint investigation, the government is under an unyielding production obligation. It's not unyielding, and I know that there's two orders, and they both work together. The motion to compel order, which you granted, and then the order denying sanctions. It's not unyielding. The government never has to turn over everything. Okay, so let me ask the question this way. What rule of law would you like us to announce? Go ahead and state it in one or two sentences. The rule of law is once a district court enters an order compelling the government to turn something over, despite them not having it, if they find that there's even constructive possession of it, they have to turn it over no matter what. And if they cannot, then sanctions have to be imposed that are fair and reasonable to the situation. Our main defense in that case was going to be a Fourth Amendment challenge. They found the images or whatever, the videos on his computer, so there was no possession issue. There was no sufficiency of evidence issue. This was a Fourth Amendment issue, a pretrial issue, and there's a difference between JANCS Act material, which doesn't have to be turned over until trial, and pretrial discovery, which Rule 16 governs. And Rule 16 is broad. It says we should get more discovery. The government always has the ability to determine what they're going to turn over and not turn over, and it's our job as defense attorneys to figure out what else is there, what else are we entitled to, to be able to defend our client to the best of our ability. And in this case, we found that there's a potential, a strong potential for a Fourth Amendment challenge based on how typically these types of investigations work. And so we followed the proper procedures of asking the court to compel them to turn it over. The source code existed. We know it existed. So what we did was we said, look, we know they don't have it in their possession, but if you could impart constructive possession on them by finding prima facie that there was a joint investigation, which unlike the Second Circuit, which says they have to be virtually agents of each other, here's just substantial cooperation, which they showed. And the district court even found that the government was underplaying their role in it because they came out with a... I'm still confused about the first and the second order. Your argument then to us is the rule of law you're asking for is enforcement of the April 30 First Order by Judge Feinerman. Yes. Okay. And that order by its terms says the production obligation is subject to targeted objections. Yes. But not being able to get it is not an objection. An objection has to have some kind of legal grounds in it, like privilege or confidentiality. You're saying, what do you mean? We're diligent. We've acted in good faith. We can't get it. I can't produce... His point in his second order was they can't produce what they don't have and can't get through the exercise of good faith and diligence. And so the only thing that... I mean, that's why I'm pushing you on the law here, is your argument that in a joint investigation context, the due process clause compels the production, not withstanding diligence and good faith. That's correct, Your Honor, because the benefit of the government not being able to get it shouldn't go to the government and saying, you know what, we can't produce all these things that are material to your defense. We're going to just go against the defendant and say, you know what, we're going to take away... I'm not. I don't know why you're casting it in terms of going for the government and going against the defendant. Let's talk about the due process obligation the government is under. They either are or they are not under an obligation that way. I agree. They are under an obligation to turn over discovery pursuant to Rule 16 and Brady and the progeny of Brady. Rule 16 here said you have to turn it over. The judge knew when he entered the order compelling them that they didn't have it. So then later saying we don't have it and can't turn it over can't be their target objection when they already said that before Judge Feinerman... Subject to additional good faith efforts. In other words, unless you tell me, maybe Mr. Kerwin will tell me I just completely misunderstand the fact pattern. That on April 30th when Judge Feinerman entered his first order, he contemplated that the government would then attempt to get the source code. And your position seems to be he didn't contemplate that at all. He directed them to produce it. And he really attempted. There has to be some kind of sanction repercussion for not being able to produce the material or the discovery that is material to the defense. We can't just say, sorry, Mr. Mitrovich, we're not going to be able to give you everything that you need to defend yourself. Go ahead and plead guilty. That's not fair. When the source code exists, when constructive possession is imparted, there has to be consequences of the party that can't produce it even past good faith efforts. Okay. I mean, so that, I mean, that's a clear statement of the rule you're asking us to announce in the name of the due process clause. Yes, Your Honor. And if it's okay with the court, if there's no more questions, I'd like to reserve the floor. Yeah, no, I mean, I, yeah, I mean, I appreciate it. Okay. Mr. Kerwin. Good morning and may it please the court. Brian Kerwin for the United States. Your Honor, the district court did not abuse its discretion in declining to impose discovery related sanctions in this case. It was undisputed that the source code defendant sought was never in the possession, custody, or control of the FBI, which rule 16 contemplates, and that the foreign government had refused the FBI's good faith and repeated efforts to obtain it. For those reasons, the source code did not fall within rule 16, and there was no misconduct on the part of the government for the district court to sanction. And so there was no violation of the rule and there was no misconduct to punish or deter. And so certainly the district court did not abuse its discretion in declining to sanction the government. And if I can respond to Judge Scudder's questions to counsel on the dichotomy between the two orders, the first order was an order directing the government to respond to two broad interrogatories that defense counsel imposed. One was for all communications between the government and the foreign authorities, and another was for information regarding the technique that was used to unmask his IP address. As Judge Feinerman made express in the second order, that was never in order to produce anything specific or any piece of material that did or did not exist in the government's possession. It was in order to respond to those two interrogatories, which the government then did by producing over 1,000 pages of materials that were responsive to those two requests. And when the source code was not in those materials, as no one expected it to be, defense counsel came back and filed a motion for sanctions on the basis, as counsel articulated today, alleged violation of that first order. And Judge Feinerman clarified there's no violation of the order. The government has produced everything that it has or reasonably can obtain. And there's no bad faith to sanction here, because there's no dispute that the government has repeatedly sought this information and can't access it. I am a little concerned about the incentives here. The reason, as we can tell from the record, the government initially sought the source code from these foreign agencies is it knew it had this legal landscape in the United States where it needed to explain to judges whether a Fourth Amendment search was taking place with certain technology. And so the government expressed that and acknowledged that. And that's why it was trying to get the code. Of course, it couldn't get it. Then Mr. Mitrovich's case comes along. If the rule is the government can try, try, try its best to figure out this source code, find it out. And if it can't get it, it can't get it. But it can still proceed with a prosecution. What incentive does the government ever have to figure out if the identifying technique here conducted a Fourth Amendment search? In other words, if its original concerns about the technology were present, and then the government can just go forward on potential technology, build cases based on technology that potentially violates the Constitution? Well, I think there are a few questions baked into that one question, Judge. And I'll start at the beginning where you asked about the government's incentives when they're putting together search warrant applications in the United States. And, of course, the reason they're doing that is to establish probable cause, that there's a connection between the IP addresses that they've been given as a tip from these foreign authorities and the homes that they're seeking to go in and search. And the incentive at that point is for the government to properly articulate probable cause. And, in other words, describe why the is reliable. And so, at that stage, their incentive is to determine how this worked to the best they can for purposes of articulating to a judge here why they should be able to go into that person's home. And so I think what defense counsel is conflating is the concept of a prosecution team and when some other agency's files should be imputed into the possession of the government. And the concept of a joint investigation, which is the subject of Judge Finerman's order. And those are two very different things. We see this notion of a prosecution team in domestic investigations frequently where there might be two federal agencies or a state and federal agency that are investigating particular targets here. They're working towards a singular prosecution. And, therefore, for purposes of discovery, the federal government would be responsible for potentially producing those materials in discovery. This is a different scenario where a foreign government and a U.S. government are sharing resources. They have a broadly similar goal of shutting down this nefarious website that's being operated overseas. But they're not working towards the same prosecution. And the fact that they're being stonewalled at the very outset of trying to put together search warrant affidavits, I think, speaks to that conclusively. And so the question becomes, well, what's the upshot of the assumption that Judge Finerman made that there was a joint investigation here? And that's answered by the Stokes case. Stokes says that if a foreign government is investigating U.S. citizens abroad, there's no Fourth Amendment restrictions on that investigation, which makes sense. But if a U.S. agency is substantially participating in that investigation, well, at that point, the Fourth Amendment does apply. But the warrant requirement does not. And I think that's a critical flaw in defense counsel's argument here. Because what he's seeking to do is to try to make an argument to the district court that the Fourth Amendment's warrant requirement was violated. But Stokes says expressly that even if this was a joint investigation where there was substantial participation from the FBI, and I think as a factual matter, there likely was not. Judge Finerman assumed there was because the parties invited him to do so. But at most, that triggers the reasonableness requirement of the Fourth Amendment. And so this really goes less to whether the information was possessed for the first prong of Rule 16 and more to the materiality piece, which is also fatal to the defendant. Because we've got here foreign authorities conducting an investigation abroad, not even into any specific U.S. targets. In fact, when they put this post on the dark web in Australia, they have no idea who's going to click it and where that person's going to be located. And so the notion that they would have to come to a U.S. court, let alone one here in Chicago, and ask permission to do that, not only is divorced from constitutional law, it has no practical application. Because there's no U.S. target in mind. But I don't think that's what Mr. Glossman is arguing. I think he's concerned about the American prosecutors relying on that evidence conducted without Fourth Amendment protections to build a case against Mr. Mitrovich. Well, I think, Judge, you're right, but that's a necessary implication of his argument. Because for there to be a Fourth Amendment claim here, he's arguing, I think expressly in the brief, that what the foreign authorities did overseas violated the warrant requirement and that they should have gotten permission from a U.S. court at the outset. And that's just completely contrary to U.S. constitutional law and what the Seventh Circuit has said in Stokes. Mr. Kerwin, can you help me on one? Mr. Glossman, I thought, in his brief, a little bit here today, he makes a good point about the assumption that the district court made, and it's expressed in Judge Feinerman's opinion on page 10, where he says, for purposes of evaluating the Brady claim, the court assumes constructive possession. What's the legal significance, if any, of that assumption? So Judge Feinerman, I think, accurately interpreted the Brady argument that defendant was making below as one that spoke to his guilt or innocence at trial. And the way that it was argued to the district court was that, for all we know, this technique that the foreign government used exposed my computer or operating system to hackers. And so Judge Feinerman, in analyzing that Brady claim, said, even if I assume that there's constructive possession, meaning that the government has this material, it can't possibly be material to your defense because it's so far-fetched. And I think that dovetails with what I was just attempting to articulate to Judge Jackson of Pumi, that even if you were to extend the Brady right for the first time to the motion to suppress stage, the defendant can't show how this source code was material to his defense because there's no cognizable Fourth Amendment claim to be made on the basis of the warrant requirement. Yeah, what gives me hesitation when I see the assumption, you can tell me I shouldn't hesitate on it, is ordinarily, if I were to say the government is in constructive possession of something, you would think that the constructive possession then would lead to your ability to make a production. And so every time, I've probably read that three or four times, and I pause on that assumption because I think if the government is in constructive possession of the source code, it's up to him and his client whether they can end up making something that struck the district court as fanciful, whether they can supply an evidentiary basis for it. And the point that Mr. Glossman is quite articulate on is you need the source code to do that. And here you have the district court assuming constructive possession of the source code. Right, and I know the line you're referring to, Your Honor, and it's distinctly in the court's Brady analysis. Absolutely. Right, and so I don't think there's any legitimate debate that in the Rule 16 portion of the analysis, the court found that this was not accessible to the government, which necessarily is a finding that it wasn't constructively possessed. So why write that sentence? I think it was a way to show how weak the Brady argument actually was in the context of- Well, the Brady argument has no footing until Mr. Glossman and his client get a hold of the source code. I mean, it's completely dependent upon getting the source code because otherwise every judge on the planet is going to say your argument right now is rooted in speculation. Right, so his point is that you have to get the source code, and then my theory about whether the malware resulted in the child pornography being uploaded or downloaded without my client's knowledge, I'll either be able to prove that or I won't, but I need the source code. And then you have the district court saying, seemingly in tension with the Rule 16 analysis, that I'm going to assume the government constructively possesses the source code. I take Your Honor's point, and I agree that it is in tension, but I think it's because the district court is bifurcating and siloing its analysis on the two claims. There's a Rule 16 claim of, can this be material to my defense, and does it fall within Rule 16, and is that inability to produce it sanctionable? And then there was this separate claim that the district court found too fanciful to be meritorious because it couldn't possibly be exculpatory, and that was because, to put a finer point on it, the defendant's argument on the Brady point was that somehow child pornography had been put on his computer against his will or without his knowledge, and that doesn't make any sense on the facts of this case because he was charged with possessing hard drives that were in his home. And so the district court said, look, on the Brady piece, even if I assume that the government has constructive possession of this source code, it can't be exculpatory. I thought his point, though, was that the child pornography on the hard drives in my home were uploaded as a result of the way this malware operated, or that's my theory, but I need the malware to prove that. Well, to be clear, Judge, the indictment did not charge the defendant with accessing or possessing the video that the foreign authorities put online. He was charged with possessing the hard drives that they found in his house when they did the search warrant here in the I don't think that there's any... I see. That's what your point is, that it gets very disconnected factually. And that was why the district court said, look, I'll even assume for purposes of Brady that the FBI has constructive possession over the material. It still doesn't render your argument meritorious on the Brady piece. But if the source code were the product of a search, product of malware being used to discover his IP address, there would have been no search of his home to find the hard drives with the child pornography. So how is that disconnected? Well, every indication that the parties had from the thousand pages of discovery that was turned over, including the technical overview of how this worked, indicated that it wasn't a search, and that was the FBI's understanding. Yeah, but that gets to where we have to take the government's word for how this technology operated when the government itself says we don't have the specific thing. All we have is an overview from the foreign agencies. We think this is how it works. And we've got plenty of case laws saying that the court does not have to take the government's at its word about the content of certain discovery. Well, two things, Judge. At most then, what you have is a piece of evidence that is potentially exculpatory. And the law is clear that sanctions are inappropriate when potentially exculpatory information is unavailable. And there's no bad faith. Separate and apart from that, this was not a motion to suppress. This was a motion for discovery and a motion for sanctions. But even if it were a motion to suppress, the reasonable beliefs of the FBI are central to that analysis because even in a world where this were a search and a warrant were required, which would be inconsistent with Stokes, but even if that were the case, but the FBI reasonably understood that what they had done did not conduct on the part of the government to punish or deter because there's no bad faith or bad actors. And so I take your point that one relies on the other. But at the end of the day, the defendant is making an argument that a warrant was required for foreign authorities to do what they did. And there's no legal basis to make that claim. No, the defendant is making the argument that if the government can't produce this thing that the court originally ordered produced, and it allows me to build my Fourth Amendment argument, then there ought to be a consequence for the failure to produce despite any good faith effort. Again, it's a statement of law. Judge Scudder invited Mr. Guzman to articulate. So no, he's not saying foreign authorities needed a warrant. Well, I disagree, Judge. That helps you if he's saying that, but he's not saying that. I disagree that he's not saying that. But regardless, the question is whether sanctions were appropriate based on a Rule 16 violation. And there's no question in the district court's mind, or to the party's thinking, that the FBI did not actually possess this information, and they could not obtain it, and therefore did not constructively possess it. And so there's no authority or requirement that the agency's files on the other side of the world are automatically producible here. And that's why we cite the case from the Third Circuit in a footnote, Rieros, that questions whether that concept could ever apply and in what circumstances it could. That's a question this court has never grappled with. So I see that my time is up. Unless there are no further questions, I'll ask that the court affirm the judgment and sentence of the district court. Okay. Thank you, Mr. Guzman. You've got a few minutes. You're welcome to come back up. Your Honors, I'd just like to talk about a few points. The government keeps framing this as if this IP address was just a tip from Oceanian authorities. That's a disingenuous characterization of it. It was not just a tip. This was substantial cooperation from the United States government with them, which is what the Stokes case talks about. That's why Judge Finerman talked about constructive possession. And I don't think it's fair to say, you know, we're only going to say he said constructive possession for one argument, but that he doesn't assume it for the whole one. That's not fair. It goes to the whole thing. That was his assumption when he made the ruling that he made, that they constructively possessed it. You know, if you look at this timeline of what they did, Judge, it's fair to say they constructively possessed it because they were intimately involved in every part of it. They found out where the server for the love zone was located. They got a copy of that. They were told by New Zealand and Australia when they got control of it. They gave them copies of the website that the United States government then abstracted and created data reports on and sent back to them. They were given this overview before it was ever launched. They were given reports during the months leading up to it. So just to say, oh, hey, by the way, United States government, here's a tip on this IP address. It's not really what happened. So is your, can I, can I say what I think your argument is and you can tell me I'm wrong or you can improve upon it? Sure. I think what you're saying is that the record pretty clearly establishes a joint investigation step one. Yes. Okay. Step two, in that joint investigation, the United States constructively possessed the source code. The district court assumed it, but what you're saying is that it's basically a finding by the, okay. And the moment you get to step two of constructive possession, they're under an obligation, rule 16 and due process based, they're under an obligation to produce that. And then once it's produced, your client's going to have the source code and he'll do what he can with the source code. That's correct. Either use it for purposes of trial or for a fourth amendment challenge. And his theory about uploading or downloading, he'll either be able to prove it or he won't. And then if he can't, he won't file the motion, but he has to have the opportunity to do that. Is that a, is, don't let me put words in your mouth. I mean, you're plenty articulate. Is that a fair characterization of your argument or is there a link I'm missing in it? No, that's it. Your Honor. And when the government was talking about during theirs, what's the implication of this? Well, the implication is, is if you can't give the defendant all the tools to defend himself at a point where he's still presumed innocent, then don't prosecute him. Don't keep going forward. Don't figuratively handcuff him and say, you know what government we're going to believe you. The source code wasn't a fourth amendment violation. It wasn't any other kind of improper action. You're right. I'm just going to plead guilty. That's not fair. That's not what these courts are about. And the government has to be held to some kind of standard of producing discovery that they're compelled to produce if they can't get it. I think it might've be a different analysis if it was just a tip and it wasn't a finding of a joint investigation, but there was one. And if we kind of draw a similarity between criminal cases and this for purposes of a conviction, there's no difference between actual and constructive possession of something. There shouldn't be a difference here of actual and constructive possession of something either. They constructively possessed it. It was theirs. They were ordered to turn over. They did it. There has to be some kind of consequences. And the only fair ones in this matter would be to suppress the evidence that was derived from the very discovery that they were ordered to turn over and couldn't. Thank you. Unless there's any more questions, nothing further this morning. Okay. Mr. Glossman, Mr. Kerwin, thanks to both of you for your argument. Mr. Glossman, I have a note here. Were you court appointed to represent Mr. Mitrovich? I was. Okay. You have our thanks as a court for your representation and the fine job you've done representing him.